IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SOLON PHILLIPS, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-19-2427 |
| MARYLAND BOARD OF LAW EXAMINERS, *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## **MEMORANDUM OPINION**

Defendants, the Maryland Board of Law Examiners (the "Board") and Johnathan Azrael, John Mudd, David Ralph, and Matthew Mills (collectively "Defendants"), move this Court to dismiss the Complaint of *pro se* Plaintiff, Solon Phillips, for constitutional vagueness, civil rights violations, due process violations, and gross negligence (the "Motion to Dismiss") (ECF No. 18). After considering the Motion to Dismiss and the responses thereto (ECF Nos. 20, 21), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss.

### FACTUAL BACKGROUND[1]

Plaintiff is forty-five years old and graduated from the American University Washington College of Law in 2008 with a juris doctor degree. ECF No. 7 at 2, ¶¶ 4–5. While Plaintiff was in law school, he and his ex-wife went through divorce proceedings. *Id.* at 6–8, ¶¶ 33, 39–42. During the tumultuous proceedings, Plaintiff filed a motion to recuse the judge presiding over his divorce for being biased against him in issuing certain orders. *Id.* at 7, ¶ 40. In November 2008, the judge

---

[1] The facts are presented as alleged in Plaintiff's Complaint, except where otherwise indicated.

1

recanted her previous controversial ruling and closed Plaintiff's divorce case. *Id.* at 7, ¶ 42. Unbeknownst to Plaintiff, after closing his case, the judge sent a letter to the Board recommending they deny his admission to the Maryland bar. *Id.* at 7–8, ¶ 43.

After pursuing an MBA degree, in February 2011, Plaintiff sat for the bar exam, which he passed. *Id.* at 8, ¶ 45. Prior to graduating law school, Plaintiff had attended a Character Committee interview in 2007, and had received a favorable recommendation from his interviewer. *Id.* at 8, ¶ 46. After Plaintiff did not receive his expected tickets to the June 2011 bar admission ceremony, Plaintiff was informed he needed to fill out a new bar application, which he did. *Id.* at 8, ¶¶ 47–49. After inquiring over several months about when he would be sworn in, Plaintiff was informed his prior divorce judge's letter to the Board had surfaced, and he was required to attend a character hearing. *Id.* at 8, ¶ 50. At the end of the hearing, Plaintiff was informed that his application was being held open, and after he updated his application with a copy of his credit report a decision would be made. *Id.* at 9, ¶ 55.

In 2013, while Plaintiff's bar application was still pending, a member of an online support group of which Plaintiff was a part asked Plaintiff for help handling interactions with her ex-husband's new wife. *Id.* at 10, ¶¶ 66–67. Plaintiff had never met or spoken on the phone with this woman, but he emailed her a copy of a cease-and-desist letter she could send to her ex-husband's new wife. *Id.* at 10, ¶ 68. After the member approved the contents of the letter, Plaintiff decided it needed to be more effective. *Id.* at 11, ¶ 69. In 2007, while in law school, Plaintiff had incorporated a law firm for himself, his father, and his high school friend called Phillips, Phillips, and Dow, LLC. *Id.* at 10, ¶ 64. In addition to prematurely incorporating, Plaintiff also purchased letterhead for the firm in 2007. *Id.* at 10, ¶ 65. In 2013, while assisting the member, he printed the cease-and-desist letter on the 2007 firm letterhead and signed his father's—a licensed Maryland attorney—

2

name to the letter without his father's knowledge. *Id.* at 11, ¶ 69. When the member's ex-husband's new wife received the letter, she filed a complaint with the Maryland Attorney Grievance Commission, who opened an investigation into Plaintiff's father. *Id.* at 11, ¶¶ 73–74. Plaintiff was summoned to be a witness in his father's disbarment hearing, and his father was ultimately disbarred. *Id.* at 11, ¶¶ 75–76; *see also Attorney Grievance Comm'n v. Phillips*, 451 Md. 653 (2017). At some point after learning about the disbarment proceedings against his father, Plaintiff asked his attorney to inform the Board of the dispute. ECF No. 7 at 11, ¶ 78. As a result of the pending action against his father, Plaintiff, on the advice of counsel, withdrew his bar application in 2015. *Id.* at 12, ¶ 80.

In 2016, Plaintiff resubmitted his Maryland bar application. *Id.* at 12, ¶ 84. Plaintiff took and passed the Maryland bar exam again in February 2017. *Id.* at 12, ¶¶ 85–86. After finding out he passed the Maryland bar exam for the second time, Plaintiff decided to apply to the Florida bar in May 2017. *Id.* at 12, ¶¶ 86–87. Also in May 2017, Plaintiff had an interview with Character Committee member Deborah Johnson. *Id.* at 12, ¶ 88. Plaintiff alleges he disclosed his application to the Florida bar and his involvement with his father's disbarment hearing to Ms. Johnson, who gave Plaintiff a favorable recommendation. *Id.* at 13, ¶ 89. In June 2017, Plaintiff received notice from the Board that he would have a character hearing in July 2017. *Id.* at 13, ¶ 91. Plaintiff alleges Defendants did not provide him with a copy of Ms. Johnson's report ahead of the hearing, violating a Maryland rule regarding this procedure. *Id.* at 13, ¶ 92. At the hearing, the Board wanted to discuss Plaintiff's (1) unauthorized practice of law, (2) contribution to his father's disbarment, and (3) pattern of lack of candor and failure to abide by the law. *Id.* at 13, ¶ 93. In October 2017, the Board issued a final recommendation that Plaintiff be denied admission to the bar. *Id.* at 14, ¶ 101.

Because Plaintiff received a favorable recommendation from the Character Committee and an unfavorable recommendation from the Board, per Maryland Rule, the Court of Appeals of Maryland issued Plaintiff a notice of hearing for Plaintiff to argue the Court of Appeals should accept the Committee's recommendation. *Id.* at 15, ¶¶ 104–05. On November 6, 2017, at the hearing, Plaintiff argued that the Board erroneously believed he had not disclosed information he had actually disclosed. *Id.* at 16, ¶ 111.

On November 30, 2017, before the Court of Appeals had issued a decision on his hearing and application, Plaintiff attended an interview with the North American Securities Administrators Association ("NASAA"). *Id.* at 16, ¶ 112; ECF No. 18-1 at 9. Plaintiff had applied for a position with NASAA with a resume that listed his email address as "solonesq@gmail.com," stated he had worked as a "Junior Associate" at Arnold & Porter, LLP for seven years, and stated he had acquired "Maryland Bar Admission." ECF No. 18-1 at 9–10. During Plaintiff's interview with A. Valerie Mirko, Esq., Ms. Mirko learned that Plaintiff was not a member of the Maryland bar—or any bar— and the interview ended. *Id.*; ECF No. 7 at 16, ¶ 115. Ms. Mirko advised the Board of the incident. *Id.* at 16, ¶ 116. On December 11, 2017, the Board submitted an addendum to its recommendation to the Court of Appeals detailing the incident between Plaintiff and Ms. Mirko. *Id.*; ECF No. 18-1 at 9.

On December 20, 2017, the Court of Appeals published an opinion denying Plaintiff's application to the Maryland bar. *In re Phillips*, 547 Md. 113 (2017).[2] The Court of Appeals found that Plaintiff "ha[d] not met his burden of showing his good moral character and fitness for the practice of law due to his continuous 'failure [and] refusal to answer fully and candidly any

---

[2] This Court takes proper judicial notice of "docket entries, pleadings and papers in other cases" in reciting the background of this case. *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D.Md. Aug. 20, 2015), *aff'd*, 639 F.App's 200 (4th Cir. 2016).

question in the application.'" *Id.* at 127 (quoting Md. Rule 19-203(d)). The Court was particularly disturbed by Plaintiff's actions leading to his father's disbarment and his conduct regarding his NASAA application. *Id.* at 127–28. The Court found Plaintiff "ha[d] demonstrated a disturbing pattern of selective candor, which 'impinges upon his character and fitness to practice law.'" *Id.* (quoting *Application of Strzempek*, 407 Md. 102, 114 (2008)). Ultimately, the Court of Appeals concluded that Plaintiff would not be admitted to the Maryland bar.

## PROCEDURAL BACKGROUND

On August 22, 2019, Plaintiff filed this suit in this Court against Defendants, alleging constitutional violations of vagueness, civil rights, and due process and gross negligence, seeking that this Court declare Defendants' application of Maryland's character and fitness standards as applied to Plaintiff was unconstitutional, declare Defendants grossly negligent for failing to recommend Plaintiff's admission to the Maryland bar, and declare "that Plaintiff must be admitted to practice law in Maryland." ECF No. 7 at 33.[3] On October 23, 2019,[4] Defendants filed the Motion to Dismiss for lack of subject matter jurisdiction and for the failure to state a claim. ECF No. 18. Plaintiff filed an opposition on November 5, 2019, ECF No. 20, to which Defendant replied on November 12, 2019, ECF No. 21.

This matter is now fully briefed, and the Court has reviewed Defendant's Motion to Dismiss, as well as the responses thereto. For the following reasons, Defendant's Motion to Dismiss (ECF No. 18) will be GRANTED.

---

[3] ECF No. 7 is Plaintiff's Amended Complaint. Plaintiff voluntarily filed an Amended Complaint on September 13, 2019, solely "to include all character references as exhibits." ECF No. 7 at 1. The contents of the Complaint remained unchanged.

[4] In accordance with Standing Order 2019-07 of the United States District Court for the District of Maryland and upon consent of all parties, this case was directly assigned to United States Magistrate Judge A. David Copperthite for all proceedings on September 11, 2019. ECF No. 4.

## DISCUSSION

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 18 at 1. Because this Court finds it does not have subject matter jurisdiction over this suit, it will only address Defendants' Rule 12(b)(1) arguments.

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought in a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.Md. 2005). Essentially, a Rule 12(b)(1) motion to dismiss asserts that the plaintiff lacks "a right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A defendant can challenge the District Court's jurisdiction either facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant presents a facial challenge, the defendant "contend[s] 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). When addressing a facial challenge, a court takes the complaint's allegations as true and denies the motion "if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* When a defendant presents a factual challenge, the defendant contends that the allegations in the plaintiff's complaint are not true. *See id.* When addressing a factual challenge, a court "'may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Id.* (quoting *Adams*, 697 F.2d at 1219) (emphasis omitted).

6

**B. Defendants' Motion to Dismiss**

In their Motion, Defendants seek to dismiss all claims against them for lack of subject matter jurisdiction. Defendants appear to raise a facial challenge to the Court's subject matter jurisdiction, and the Court will take the allegations in Plaintiff's Complaint as true. The Court will address all Counts.

### 1. *The Court of Appeals of Maryland Has Exclusive Jurisdiction over Bar Admission Decisions.*

Plaintiff requests that this Court "declare that Plaintiff must be admitted to practice law in Maryland," among other forms of relief. ECF No. 7 at 33. Defendants argue that this Court cannot provide Plaintiff this specific form of relief because the Court of Appeals of Maryland has exclusive jurisdiction over admission to the Maryland bar. ECF No. 18-1 at 18–20. Plaintiff contends he "is requesting that *this* Court declare his rights as a qualified applicant seeking admission to the Maryland bar," and this Court has the authority to do so. ECF No. 20 at 2 (emphasis in original). The Court agrees with Defendants.

> It is true, of course, that the privilege of practicing law is a valuable one and that the requirements of procedural due process must be met before a State can exclude a person from practicing law. It is equally true, however, that there is no vested right in an individual to practice law, and that the State can bestow the privilege upon such conditions governing its exercise as will be consistent with the privilege's nature and purpose.

*Attorney Grievance Comm'n v. Reamer*, 281 Md. 323, 330–31 (1977) (internal citations omitted).

There is no question that the Court of Appeals of Maryland has exclusive jurisdiction over who is and is not admitted to practice law in Maryland. "Since the passage of Ch. 139 of the Laws of 1898 . . . the Court of Appeals in the exercise of its inherent and fundamental judicial powers has supervised, regulated and controlled the admission of lawyers." *Maryland State Bar Ass'n v. Boone*, 255 Md. 420, 429 (1969); *see also In re Application of Kimmer*, 392 Md. 251, 269 (2006)

7

("[I]t has been clear, since 1898, that the Court of Appeals has had exclusive jurisdiction over the regulation of, and admission to, the practice of law."), *Application of Allen S.*, 282 Md. 683, 689 (1978) ("Upon [the Court of Appeals] falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State."), *Bastian v. Watkins*, 230 Md. 325, 329 (1963) ("[I]n 1898, following a definite trend toward uniformity that apparently began as early as 1831, the Court of Appeals of Maryland was vested with exclusive power to admit applicants to practice law."). Currently, the Maryland Code provides, "Subject to this title, the Court of Appeals shall adopt rules that govern the standards and procedures for admission to the Bar." MD. CODE, BUS. OCC. & PROF. § 10-103(a). Pursuant to this Maryland Code provision, the Court of Appeals has adopted a number of Rules governing admission to the Maryland bar, including establishing both a State Board of Law Examiners and regional Character Committees. *See* Md. Rule §§ 19-102–103, 19-204.

Plaintiff contends that he "is not asking this Court to admit him into the Maryland bar," so the Defendant's jurisdictional argument should fail. ECF No. 20 at 1. The requested relief in the Complaint, however, asks this Court to "declare that Plaintiff must be admitted to practice law in Maryland." ECF No. 7 at 33. This Court not only lacks the authority to admit Plaintiff to the Maryland bar but also lacks the authority to declare Plaintiff must be so admitted. This Court is neither the State Board of Law Examiners nor a Character Committee—the entities the Court of Appeals has created to issue recommendations for bar applicant admissions. Furthermore, even if this Court could "declare Plaintiff must be admitted" to the Maryland bar, the Court of Appeals would have no obligation to comply with that declaration, as it retains exclusive jurisdiction over who is ultimately admitted to practice law. Accordingly, to the extent Plaintiff requests this Court

declare Plaintiff must be admitted to the Maryland bar, this Court lacks subject matter jurisdiction, and Defendants' Motion to Dismiss is GRANTED.

> 2. *This Court Lacks Subject Matter Jurisdiction over this Action Under the* Rooker-Feldman *Doctrine.*

Plaintiff's Complaint against Defendants contains six claims: (1) Maryland's character and fitness evaluation "as it was applied to Plaintiff[] is unconstitutionally vague and arbitrary"; (2) Defendants denied Plaintiff the "right and privilege to practice law in Maryland" in violation of 42 U.S.C. § 1983; (3) Defendants violated Plaintiff's Due Process rights by declining to recommend his admission to the bar on an unfounded basis; (4) Defendants violated Plaintiff's Due Process rights by denying him the opportunity to be heard; (5) Defendants violated Plaintiff's Due Process rights by allowing an unconstitutional delay processing his application; and (6) Defendants were grossly negligent in handling Plaintiff's character evidence. Defendants argue that the Court lacks subject matter jurisdiction over all claims because Plaintiff is attempting to appeal a state court judgment against him to this Court. ECF No. 18-1 at 21–22. While Plaintiff contends that he properly seeks declaratory relief under the Declaratory Judgment Act, ECF No. 20 at 2, Defendants counter that Plaintiff merely "seeks to relitigate the merits of his underlying Court of Appeals of Maryland decision not to admit him into the Maryland State Bar," ECF No. 21 at 1. The Court agrees with Defendants.

> a. The *Rooker-Feldman* Doctrine and Its Application

Federal district courts may only exercise "original, not appellate, jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Upholding the prohibition on federal district courts' exercise of appellate jurisdiction, the *Rooker-Feldman* doctrine overrides concurrent jurisdiction of federal and state courts in limited circumstances. *Id.* The doctrine was derived from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Supreme Court held "the federal suits [in *Rooker* and in *Feldman*] impermissible," and "emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, and now by 28 U.S.C. § 1257, exclusively in [the Supreme] Court." *Exxon Mobil Corp.*, 544 U.S. at 283 (internal citations omitted). In both *Rooker* and *Feldman*,

> the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.

*Id.* at 291 (internal citations omitted). Essentially, the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

One of the cases from which this doctrine is derived—*District of Columbia Court of Appeals v. Feldman*—is directly analogous to the instant matter. In *Feldman*, two District of Columbia bar applicants were challenging the D.C. Court of Appeals' denial of their bar applications. Both applicants were seeking declarations from the district court that the Court of Appeals violated their Due Process rights, among other forms of relief. *Feldman*, 460 U.S. at 465–69, 470–73. Ultimately, the Supreme Court held that district courts

> have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.

10

*Id.* at 486. The only avenue for review of a state court's decision regarding an individual bar application is in the Supreme Court. *Id.* Furthermore, "*Feldman* made clear that this rule applied even to constitutional claims where such claims 'are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state's bar.'" *Czura v. Supreme Court of South Carolina*, 813 F.2d 644, 646 (4th Cir. 1987) (quoting *Feldman*, 460 U.S. at 482–83 n.16). This rule equally applies to alleged constitutional violations by a state's Board of Law Examiners, because "the Board is an extension of the state court," and, therefore, "[f]ederal district court review of a decision by the Board raises the same principles of equity, comity, and federalism as would federal review of an action taken by the state court directly." *Sibley v. Hergenroeder*, No. DKC 2006-1222, 2006 WL 3354137, at *3 (D.Md. Nov. 17, 2006) (finding the District Court lacked subject matter jurisdiction when the plaintiff challenged the Maryland Board of Law Examiner's decision to delay finalizing plaintiff's bar application).

Here, Plaintiff challenges Defendants' actions directly relating to Plaintiff's application for admission to the bar as well as the Court of Appeals' denial of his application. Because Plaintiff's case is directly analogous to the issues addressed in *Feldman*, this action falls squarely within the *Rooker-Feldman* doctrine.

    b. Plaintiff's Civil Rights, Due Process, and Gross Negligence Claims (Counts II–VI)

In Counts II–VI, Plaintiff brings a § 1983 Civil Rights claim, three Due Process claims, and a gross negligence claim. All five claims relate to Defendants' handling of his bar application. Even though four of the five Counts contain constitutional claims, the claims are "inextricably intertwined" with Defendants' recommendation of denial—and the Court of Appeals' ultimate denial—of Plaintiff's bar application. *See Feldman*, 460 U.S. at 486. Accordingly, this Court lacks

subject matter jurisdiction over Counts II–VI, and the Court will GRANT Defendants' Motion to Dismiss as to these claims.

        c. Plaintiff's Constitutional Vagueness Claim (Count I)

In Count I, Plaintiff challenges the constitutionality of Maryland's character and fitness rules and procedure. He alleges that the character and fitness test, "as it was applied to Plaintiff, is unconstitutionally vague and arbitrary." ECF No. 7 at 20, ¶ 139. He contends that the denial of his bar admission "based on a vague and arbitrary process as applied to his application" was through a procedure that "was and is severely damaged," and Plaintiff "asks this Court to declare that the entire application process as applied to Plaintiff was unconstitutional." *Id.* at 20, ¶ 140. From his complaint, it is clear to the Court that Plaintiff is raising a challenge to the constitutionality of the Maryland character and fitness rules and procedure as they were applied to his specific application, and not a challenge to the constitutionality of the rules generally. This conclusion is bolstered by the fact that Plaintiff does not request a general determination of the constitutionality of the character and fitness rules; he specifically requests a determination regarding the process "as it was *applied to Plaintiff.*" *Id.* at 33 (emphasis added). Even in Plaintiff's Response in Opposition, he asks this Court to decide "whether Defendants violated *his* rights pursuant to the facts and the law." ECF No. 20 at 5 (emphasis added).

Plaintiff's challenge is not a "general challenge[] to state bar rules. . . which do[es] not require review of a final state court judgment in a particular case"; it is instead a challenge to the Court of Appeals' denial of *his* bar application. *See Feldman*, 460 U.S. at 486. Accordingly, this Court does not have subject matter jurisdiction over Count I, and the Court will GRANT Defendants' Motion to Dismiss as to this claim.

## Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 18) is GRANTED.

The Clerk is directed to CLOSE this case. A separate Order will follow.

Date: 19 December 2019

A. David Copperthite
United States Magistrate Judge